

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

**JUL 3 1 2003**

CLERK, U.S. DISTRICT COURT
By
      Deputy

| | | |
|---|---|---|
| LARRY DONNELL DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:03-CV-0001 |
| | § | ** Capital Litigant** |
| JANIE COCKRELL, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## APPLICATION FOR WRIT OF HABEAS CORPUS

L. VAN WILLIAMSON
ATTORNEY AT LAW
1017 W. 10th Avenue
Amarillo, Texas 79101
Phone  (806)372-4431
Fax    (806)371-0349
Texas Bar No. 21624550

COUNSEL FOR PETITIONER

## TABLE OF CONTENTS

DESIGNATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii-iv

HISTORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-4

GROUNDS OF HABEAS CORPUS RELIEF:

     Number One: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5-21

REQUEST FOR EVIDENTIARY HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24-27

i

## DESIGNATION OF PARTIES

The following is a list of parties and participants in the underlying cause of actioin:

| | |
|---|---|
| Petitioner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Larry Donnell Davis |
| Trial Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 181st District Court, Potter County |
| Trial Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Honorable Samuel Kiser (Trial) |
| | Honorable John Board  (Current) |
| Prosecuting Attorneys. . . . . . . . . . . . . . . . . . . . . . . . . | Rebecca King, 47th District Attorney |
| | Pat Murphy |
| | Mark Baskett |
| | Jack Owen |
| | Melinda Mayo |
| | John Coyle |
| Defense Attorneys. . . . . . . . . . . . . . . . . . . . . . . . . . . | Warren Clark |
| | Bonnie Gunden |
| Defense Attorney (Federal Writ) . . . . . . . . . . . . . . . . .. | L. Van Williamson |

## TABLE OF CASES

*Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 353 (1993) . . . .    17, 20-21

*Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App. 1975) . . . . . . . . . . . . . . . . . . . . .    18

*Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App. 1975) . . . . . . . . . . . . . . . . . . . . . . . .    18-19

*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967) . . . . .    18

*Chapman v. State*, 504 S.W.2d 912 (Tex.Cr.App. 1974) . . . . . . . . . . . . . . . . . . .    19

*Cherry v. State*, 507 S.W.2d 549 (Tex.Cr.App. 1974) . . . . . . . . . . . . . . . . . . . . .    18

*Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995). . . . . . . . . . . . . . .    19-20

*Fontaine v. California*, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed. 2d 154 (1968) . . .    18

*Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965) . . . . .    17-18

*Griggs v. State*, 166 Tex.Cr.R. 56, 311 S.W.2d 418 (1958) . . . . . . . . . . . . . . . .    18

*Hicks v. State*, 525 S.W.2d 177 (Tex.Cr.App. 1975) . . . . . . . . . . . . . . . . . . . . . .    18-19

*Kimmelman v. Morrison*, 477 U.S. 365 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . .    2

*Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975) . . . . . . . . . . . . . . . . . . . . . .    18-19

*Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct.1239, 90 L.Ed. 1557 (1946). .    20

*Lee v. State*, 162 Tex.Cr.R. 489, 286 S.W.2d 633 (1956) . . . . . . . . . . . . . . . . . .    18

*McDaniel v. State*, 524 S.W.2d 68 (Tex.Cr.App. 1975) . . . . . . . . . . . . . . . . . . . .    18-19

*Moore v. State*, 999 S.W.2d 385, 405-6 (Tex.Crim.App. 1999) . . . . . . . . . . . . . .    19-20

*Overstreet v. State*, 470 S.W.2d 653 (Tex.Cr.App. 1971) . . . . . . . . . . . . . . . . . .    19

*Ramos v. State*, 419 S.W.2d 359 (Tex.Cr.App. 1967) . . . . . . . . . . . . . . . . . . . . .    19

*United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) . . . .    20

*Watson v. State*, 171 Tex.Cr.R. 526, 352 S.W.2d 120 (1961) . . . . . . . . . . . . . . .    18

**Constitution**

United States Constitution 5th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

United States Constitution 14th Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

Texas Constitution, Article I § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

**Statutes**

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

 Rule 606, *Texas Rules of Criminal Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15-16

Article 38.08, *Vernon's Ann.C.C.P.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| LARRY DONNELL DAVIS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:03-CV-0001 |
| | § | ** Capital Litigant** |
| JANIE COCKRELL, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE MARY LOU ROBINSON, UNITED STATES DISTRICT JUDGE:

Comes now LARRY DONNELL DAVIS, T.D.C.J.-I.D. # 999316, Petitioner in the above-styled and numbered cause, by and through his attorneys of record, and submits this Application for Writ of Habeas Corpus and in respect thereto, Petitioner would respectfully show the Court the following:

I.

Petitioner is illegally confined and illegally restrained of his liberty within the Texas Department of Criminal Justice, Institutional Division, Polansky Unit, 3872 FM 350 South, Livingston, Texas by Janie Cockrell, acting in her capacity as the Director of the Texas Department of Criminal Justice, Institutional Division, by virtue of certain orders, copies of which are attached

Page -1-

to this Application for Writ of Habeas Corpus, marked as Exhibit "A" and by reference made a part hereof.

This Honorable Court has jurisdiction by virtue of 28 U.S.C. § 2254 in accordance with *Kimmelman v. Morrison*, 477 U.S. 365 (1986), to hear this Application for Writ of Habeas Corpus,.

Respondent has custody of Petitioner pursuant to the judgment and sentence of the 181st District Court of Potter County, Texas, in Cause No. 40,080-B, entered on March 27, 1999. (See Exhibit "A".)

## II.

## HISTORY OF THE CASE

All references to the record are made in the following manner:
(CR*: **) refers to the Clerk's Record volume followed by the particular page in that volume; and (RR*: **) refers to the Reporter's Record followed by the volume number and the particular page in that volume.

In 1995, Applicant was charged by indictment, in the 108th District Court, Potter County, Texas, in cause number 35,664-E, for the murder of Michael Barrow. (CR 1: 133). On August 29, 1996, Applicant was re-indicted by the Potter County Grand Jury in the 181st District Court, Potter County, Texas, in cause number 36,683-B, for the capital murder of Michael Barrow. (CR 1: 136). Applicant was again re-indicted for the capital murder of Michael Barrow in cause number 40,080-B, in the 181st District Court, Potter County, Texas, on December 10, 1998. (CR 1: 2). Trail proceeded in cause number 40,080-B on December 30, 1998.

Pre-trial hearings were conducted in the case on December 30, 1998 and January 6 and 11, 1999. General voir dire of the special venire panel was conducted on January 15, 1999 and individual voir dire commenced on January 19, 1999. Voir dire examination of individual venire persons

concluded on March 9, 1999. Trial on the merits commenced on March 11, 1999.

On March 19, 1999, the jury found applicant guilt of capital murder as alleged in the indictment. (CR 2: 306). The punishment phase of the trial began on March 22, 1999 and concluded on March 27, 1999. The jury answered special issues in the manner mandating the death penalty on March 27, 1999 and the trial court accordingly sentenced applicant to die by lethal injection. (CR 2: 319-322) On April 22, 1999, applicant filed his motion for new trial. (CR 2: 408-413). A hearing was held in the 181st District Court on the motion on May 6, 1999. Evidence was taken; the trial court reserved its ruling on the motion. (RR 46: 117-18). The motion was overruled by operation of law.

Petitioner's judgment of conviction and death sentence was automatically appealed to the Court of Criminal Appeals where the judgment of conviction was affirmed in an unpublished opinion. Petitioner's writ of certiorari was subsequently denied by the United States Supreme Court. No. 02-9256.

Writ of Habeas Corpus counsel was appointed by the Court of Criminal Appeal on September 20, 2001. Application for Writ of Habeas Corpus was filed on June 17, 2002, and subsequently denied without comment by written order entered by the Texas Court of Criminal Appeals on December 18, 2003, marked as Exhibit "B" and by reference made a part hereof. On or about January 9, 2003, the Court of Criminal Appeals issued a corrected opinion, which changed the date of the written order to December 18, 2002, marked as Exhibit "C" and by reference made a part hereof..



III.

## GROUND OF HABEAS CORPUS RELIEF NUMBER ONE

**APPLICANT'S RIGHTS WERE VIOLATED UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE TEXAS CONSTITUTION AND ARTICLE 38.08, VERNON'S ANN.C.C.P., WHERE THE STATE COMMENTED ON APPLICANT'S SILENCE DURING THE STATE'S CLOSING ARGUMENT AT GUILT-INNOCENCE PHASE OF THE TRIAL.**

STATEMENT OF FACTS RELATIVE TO GROUND FOR RELIEF NUMBER 1

On rebuttal, during closing argument at the guilt-innocence phase of the trial, the prosecutor,

Mr. Murphy, made the following argument and comments: (RR 39: 42-54)

MR. MURPHY:        . . . You will look at it.  And what you will determine is Larry Donell Davis' shoes stepped on that boy three times.  Maybe more.  There was even one of his prints on the pants.  Let me tell you, when this man with the teardrop on his eye, who sits here silently - -

MR. CLARK:         Your Honor - -

MR. MURPHY:        - - and sits there and watches while - -

MR. CLARK:         That is a direct comment on his failure to testify, and we object.

THE COURT:         I will sustain the objection.

MR. CLARK:         Please instruct the jury to disregard the last comment.

THE COURT:         Ladies and gentlemen, please disregard the last statement.

MR. CLARK:         Move for a mistrial.

THE COURT:         And the Motion to - -

MR. CLARK:         For a mistrial is denied?

THE COURT:         Is denied.

MR. MURPHY:       - - watches while his attorneys get up here, and say: What's going on here? Has the state caused you to tell you this lie?  No.  (RR 39: 51-52).

Subsequent to the defendant's objection and the court's ruling, above, the State finishes its objectionable comment on the defendant's silence.  Further, the State addresses the defendant with a rhetorical question, further comment on the defendant's silence.

The defendant filed Motion for New Trial.  At the hearing on the defendant's Motion for New Trial, the defendant called three witness, who were observers of the closing arguments.  The state called the foreman of the jury.

At the hearing on the applicant's motion for new trial, applicant called three witnesses.  Each witness was a spectator in the courtroom during the closing argument of the guilt-innocence phase of the trial.

Excerpts of Deborah Lea Evatt's direct examination by defendant's counsel, Mr. Clark, follow:

Q:    Okay.  Now, is he addressing the jury at this point?  (RR 46: 25.)

A:    Yes.  (RR 46: 25.)

Q:    Where was he, in relation to the jury?  (RR 46: 25.)

A:    Approximately right where the curve is.  Right there.  And maybe about - -  (RR 46: 25.)

Q:    Okay.  (RR 46: 25.)

A:    - - one, two foot back, maybe.  (RR 46: 25.)

Q:    All right, that's about in the center - -  (RR 46: 25.)

A:    Uh-huh.  (RR 46: 25.)

Q:    - - of the - - of the bar to the jury?  (RR 46: 25.)

A:    Yes.  Yes.  (RR 46: 25.)

Q:    What do you remember him saying or doing?  (RR 46: 25.)

A:    I recall that he put the documents, really hard, up on that surface that's there.  (RR 46: 26.)

Q:    Yes.  (RR 46: 26.)

A:    And then he abruptly seemed to turn around, and his face was really red.  He walked over toward that end of the table and pointed at Mr. Davis - -  (RR 46: 26.)

Q:    Okay.  Let me - - let me stop you there for just a minute.  (RR 46: 26.)

A:    Yes.  (RR 46: 26.)

Q:    You say he walked over that way toward Mr. Davis.  Can you tell us how may steps he took?  (RR 46: 26.)

A:    Probably about - - depending on his stride, 10 to 15, maybe.  (RR 46: 26.)

Q:    Okay.  How far was he from Mr. Davis, at this point?  (RR 46: 26.)

A:    Only about three to four feet.  (RR 46: 26.)

Q:    And what did he do?  (RR 46: 26.)

A:    He pointed his finger at Mr. Davis - -  (RR 46: 26.)

Q:    Do you remember what he said?  (RR 46: 26.)

A:    Yes.  (RR 46: 26.)

Q:    What did he say?  (RR 46: 26.)

A:    He stated that Mr. Davis as he sat there silently - - and his attorneys were defending him he just - - he never said anything to help himself.  (RR 46: 26.)

Q:    That's what you recall?  (RR 46: 26.)

A:    Uh-huh.  (RR 46: 27.)

Q:    Now, whether - - of course Mr. Davis was not sitting alone?  (RR 46: 27.)

A:    No.  (RR 46: 27.)

Q:    Okay.  But you are telling the Court - - or is there any doubt in your mind who he was pointing to?  (RR 46: 27.)



A:      No. None whatsoever. (RR 46: 27.)

Q:      Now, where were you sitting in relation to this? (RR 46: 27.)

A:      I believe it was the third or fourth chair right there, on the first row. (RR 46: 27.)

Q:      Unobstructed view? (RR 46: 27.)

A:      Yes. Yes. (RR 46: 27.)

Q:      Now, did you have a chance to look at Mr. Murphy's face when he made this statement? (RR 46: 27.)

A:      Yes. (RR 46: 27.)

Q:      What did it look like, to you? (RR 46: 27.)

A:      Very, very red. (RR 46: 27.)

Q:      Was he looking at anybody when he made this statement? (RR 46: 27.)

A:      He was looking at Mr. Davis. (RR 46: 27.)

Q:      Directly at him? (RR 46: 27.)

A:      Yes. (RR 46: 27.)

Q:      After he made this statement, and he pointed toward Mr. Davis, what happened? (RR 46: 27.)

A:      There was - - you stood up. And I believe said something to the effect of that was and unjust statement. Or something to that effect. (RR 46: 27-28.)

Q:      Okay. (RR 46: 28.)

A:      I don't recall the legal terms. Then you continued to do that. Mr. Murphy continued to talk - - to the jury. It was kind of like he was shifting around to a point. If that makes any sense at all. (RR 46: 28.)

Q:      Okay. (RR 46: 28.)

A:      He would, look at - - he would like at Mr. Kiser, or Judge Kiser, I'm sorry. And then look at you, and look at the jury, and - - (RR 46: 28.)

Page -8-

Q:   Okay.  Nevertheless, to the best of your memory, he completed his argument?  (RR 46: 28.)

A:   Yes.  (RR 46: 28.)

Q:   Right?  And you were there for that?  (RR 46: 28.)

A:   Yes.  (RR 46: 28.)

Q:   He then - - what did he do after he completed his argument?  What do you remember seeing him do?  (RR 46: 28.)

A:   He came to the table as - - I was watching y'all at the time.  (RR 46: 28.)

Q:   Yeah.  (RR 46: 28.)

A:   And when I glanced over there again, he was sitting in his chair.  And his movements were just - - I mean, he was moving really quickly.  His foot was shaking, and - - (RR 46: 28.)

Q:   Okay.  So he was literally trembling?  (RR 46: 28.)

A:   Yes.  (RR 46: 29.)

Excerpts of Deborah Sue Darnell's direct examination by defendant's counsel, Mr. Clark, follow:

Q:   Tell the Court what you saw.  (RR 46: 40.)

A:   He was - - he was speaking to the jury at the jury box.  And he was talking about the defendant's confession.  And he slammed the confession down on the jury box, right there.  (RR 46: 40.)

Q:   Okay.  (RR 46: 40.)

A:   And he swung around - - I - - he took a lunging step forward, and pointed directly at the defendant, saying how he was sitting silently.  (RR 46: 40.)

Q:   Okay.  (RR 46: 40.)

A:   And hiding behind his lawyer.  (RR 46: 41.)

Q:   That's what you remember?  (RR 46: 41.)

A:   Yes.  (RR 46: 41.)

Q:    Now, were you watching Mr. Murphy when this happening?  (RR 46: 41.)

A:    Yes.  (RR 46: 41.)

Q:    Were you watching his face?  (RR 46: 41.)

A:    Yes.  (RR 46: 41.)

Q:    Were your eyes trained on anything else?  (RR 46: 41.)

A:    No, I watched the whole time.  (RR 46: 41.)

Q:    Are you sure that he pointed to the defendant alone?  (RR 46: 41.)

A:    Positive.  (RR 46: 41.)

Q:    Any doubt in your mind about that?  (RR 46: 41.)

A:    No doubt.  (RR 46: 41.)

Q:    What - - what do you remember about Mr. Murphy's mannerisms, at this point in time?  (RR 46: 41.)

A:    He was - - his voice was very strong.  He was seemed almost irate - -  (RR 46: 41.)

Q:    Uh-huh.  (RR 46: 41.)

A:    - - in his actions and his mannerisms.  (RR 46: 41.)

Q:    Okay.  What about his face?  Anything about his face that you remember?  (RR 46: 41.)

A:    It was red.  (RR 46: 41.)

Q:    Red?  (RR 46: 41.)

A:    Yeah.  (RR 46: 42.)

Q:    What was the tone of his voice?  (RR 46: 42.)

A:    He - - it was - - it was almost a shouting tone.  (RR 46: 42.)

Q:    Okay.  (RR 46: 42.)



A:    Very strong.  (RR 46: 42.)

Q:    Okay.  Okay.  Now, did you see him complete his argument at that point?  (RR 46: 42.)

A:    Uh-huh.  Yes, I did.  (RR 46: 42.)

Q:    Okay.  And after he completed his argument, what did he do?  (RR 46: 42.)

A:    He turned around and walked over to the side of the counsel table, picked up a glass of - - of water, it was in a paper cup.  And he was trembling.  (RR 46: 42.)

Q:    Trembling?  (RR 46: 42.)

A:    Trembling.  (RR 46: 42.)

Q:    Now, when you say trembling, you - - you held your hand up?  (RR 46: 42.)

A:    Like - - trembling.  (RR 46: 42.)

Q:    Literally?  It was shaking like that?  (RR 46: 42.)

A:    Yes.  Took a drink of water, and then sat down.  (RR 46: 42.)

Q:    What stood out in your mind about Mr. Murphy's summation?  (RR 46: 42.)

A:    Because he commented on the defendant not speaking for himself.  (RR 46: 43.)

Q:    Okay.  Do you know how many feet separated from Murphy from Mr. Davis, when he pointed his finger at him and said what he did?  (RR 46: 43.)

A:    Probably about two.  Two feet.  (RR 46: 43.)

Q:    Two, three feet?  Something like that?  (RR 46: 43.)

A:    Yeah.  (RR 46: 43.)

Q:    But you remember he walked away from the jury toward the defendant?  (RR 46: 43.)

A:    Yes.  I remember specifically he turned around, and took a - - a big step towards the defendant.  (RR 46: 44.)

Cross Examination of Sue Darnell:



Q:      Now, you stated, I believe, that when Mr. Murphy turned around, he made a big step or leaped? (RR 46: 45.)

A:      Lunged. (RR 46: 45.)

Q:      Lunged? (RR 46: 45.)

A:      Sort of a lunging step, yes. (RR 46: 45.)

Q:      What do you mean by the word "lunged"? (RR 46: 45.)

A:      Just a - - it wasn't a small. He didn't just turn around. He turned around and took a big step forward. (RR 46: 45.)

Excerpts of Jesse Quackenbush's direct examination by defendant's counsel, Mr. Clark, follow:

Q:      Now, do you remember anything out of the ordinary? Or anything that surprised you during Pat Murphy's closing argument? (RR 46: 58.)

A:      Yeah. I was somewhat shocked. During the last two or three minutes of his closing argument, when he was at the - - at the bar before the jury, and he was fumbling around with the - - with, I - - I believe the defendant's confession - - and he reeled around, and he pointed at the defendant, and said something to the effect that he was hiding behind his attorneys, sitting there silently. As he was pointing at him with his finger. With his - - I believe it was his right hand, and his index finger. I was somewhat shocked by the comment, because I thought that it was wrong. (RR 46: 58-59.)

Q:      You say that he wheeled around and walked toward the defendant? (RR 46: 59.)

A:      I think he took a step, or - - I'm not really sure. (RR 46: 59.)

Q:      Okay. (RR 46: 59.)

A:      But I think he was right about in the middle of the courtroom, here, when his finger was pointing towards him. (RR 46: 59.)

Q:      His finger was pointed at who? (RR 46: 59.)

A:      At the defendant. (RR 46: 59.)

Q:      Are you positive about that? (RR 46: 59.)

A:      I'm positive about that. (RR 46: 59.)



Q:  Okay. When he pointed his finger and made the comment, was he looking at anyone else? Or was he looking only at Mr. Davis? (RR 46: 59-60.)

A:  He was looking right at Mr. Davis. And again, I was seated right behind where you are, Mr. Clark. I think it was the second row. (RR 46: 60.)

Q:  Now, did you observe Mr. Murphy after he made the statement as to Mr. Davis' failure to testify? (RR 46: 60.)

A:  As soon as he raised his finger up at the defendant, I was sitting next to Debby Darnell. I jabbed her and made a comment to her. (RR 46: 60.)

Q:  Yeah? What was the comment you made? (RR 46: 60.)

A:  I - - I said two times, I believe. Objection. Instruction. Mistrial. Objection. Instruction. Mistrial. (RR 46: 60.)

Q:  And you were - - basically sotto voce, you were coaching me? And of course I couldn't hear you. (RR 46: 60.)

A:  I was mouthing it into your consciousness, hopefully. (RR 46: 61.)

Q:  Okay. All right. (RR 46: 61.)

A:  But at that point I looked - - I was looking at the jury, as well. Because that's what I do for a living. I was looking for their reaction. And - - (RR 46: 61.)

Q:  Well, let me stop you there, for just a moment. Your view then immediately turned to the jury, correct? (RR 46: 61.)

A:  Before your objection. (RR 46: 61.)

Q:  What did you observe from the jury? (RR 46: 61.)

A:  I really only focused on four. Because I saw immediate movement from two of them. Two of which were seated on the front row. The lady that was crying during Rebecca's closing argument, that was sitting in the center, who was 40 years old, 40-some years old. The African American lady on the end that Rebecca had place the shoes in front of, on this end of the counsel - - by the jury bar - - (RR 46: 61.)

Q:  Okay. (RR 46: 61.)

A:  - - Had leaned forward, and had either put one or two hands - - both of them - - on the front,

as he was pointing at the defendant.  (RR 46: 61.)

Q:     Who leaned forward?  (RR 46: 61.)

A:     I believe this lady on the end, who was sitting here.  (RR 46: 61.)

Q:     The juror on the end?  (RR 46: 61.)

A:     The juror on the end.  (RR 46: 62.)

Q:     And that was the black juror?  (RR 46: 62.)

A:     Yes.  (RR 46: 62.)

Q:     What about the lady who had been weeping?  (RR 46: 62.)

A:     I thought that I saw one hand go up, with her.  But she visibly move forward in her chair, as did two other jurors.  (RR 46: 62.)

Q:     Now, the two other jurors, you are indicating that you saw them lean forward?  (RR 46: 62.)

A:     Yes, I did.  (RR 46: 62.)

Q:     And where were they seated?  (RR 46: 62.)

A:     The lady in the center would have - - second row - - if you were facing that juror, she would have been to the - - off the right hand shoulder of the lady in the middle, that was crying.  (RR 46: 62.)

Q:     Okay.  (RR 46: 62.)

A:     And she had a lavender sweater on.  She moved forward in her seat, probably more visibly that the other three, except for the African American lady, sitting here on the end.  And then there was a gentleman seated at the very far end, if you were the prosecutor facing the jury, he would have been to the left hand side of the jury box, that also had crossed or uncrossed his legs.  Or made some movement forward.  I can't remember the - - precisely what he did.  And this, again, was within a matter of fraction of seconds that they did this.  (RR 46: 62-63.)

Q:     By this time, I'm assuming - - and correct me if I'm wrong - - that your eyes are back on Mr. Murphy?  (RR 46: 63.)

A:     Mr. Murphy lowered his arm as you stood and made your objection.  And he went back to counsel table, I believe, to get a glass of water.  And I did observe him briefly trembling, as

Page -14-

he tried to pour himself some water. (RR 46: 63.)

A:    . . . I remember him visibly shaking, though. (RR 46: 63.)

Q:    What was the tone of Mr. Murphy's voice during the course of closing argument? (RR 46: 63-64.)

A:    Loud. Authoritative. Ridiculing, with the finger pointing. The tone of his voice was loud. (RR 46: 64.)

Q:    Okay. (RR 46: 64.)

A:    There was a lot of emphasis. I think that his tone, as would anybody giving closing argument, he was trying to make a point. And as he pointed to the defendant, his voice rose as - - contemporaneously with the pointing. (RR 46: 64.)

Q:    Okay. Let me go back, specifically, and ask you this. And - - if I've covered this, you tell me. But the comment you remember hearing prior to the actual objection was what, Mr. Quackenbush? (RR 46: 64.)

A:    I remember Mr. Murphy turning around, wheeling around, either taking one step, maybe more, maybe less. But he was taking an affirmative movement towards the defendant with his finger pointing like a gun. And made a comment to the effect that he was sitting there silently, hiding behind his attorneys. (RR 46: 64.)

Q:    Okay. (RR 46: 66.)

A:    And was pointing at no one, other than the defendant. And I don't remember the teardrop statement. But I remember him pointing directly at the defendant. . . . (RR 46: 66.)

Q:    Do you recall him (Mr. Clark) challenging Mr. Murphy to respond to certain of his argument? (RR 46: 72.)

A:    I know that he didn't ask Mr. Murphy to violate his client's constitutional right to remain silent. (RR 46: 72.)

A:    Yeah. Neither had ever mentioned to me any strategy to bait any prosecutor into possibly committing reversible error by talking about their client's right to remain silent. Never once talked about an intentional - -   (RR 46: 73.)

The State's sole rebuttal witness was the jury foreman, Fredrick Gibbs. The state's reason for calling Mr. Gibbs was to have him testify regarding events in the jury deliberations that are

Page -15-

prohibited by Rule 606, *Texas Rules of Evidence*.

From the evidence adduced at closing argument and at applicant's hearing on motion for new trial, Mr. Murphy, the prosecutor's improper words and actions occurred, contemporaneously, during rebuttal argument, as follows:

1.    Mr. Murphy, red faced, "wheeled" around facing the defendant;

2.    pointed his finger "like a gun" at the defendant;

3.    "lunged" or stepped toward the defendant;

4.    in a loud voice, said: "Let me tell you, when this man with the teardrop on his eye, who sit silently - - and sits there and watches while - - watches while his attorneys get up here, and say: What's going on here? Has the state caused you to tell you (sic) this lie? No; and

5.    became visibly shaken (trembling).

The State offered no rebuttal evidence to the actions or the words of Mr. Murphy. Further, Mr. Murphy continued his statement, to its conclusion, after the court had sustained applicant's objection, after the court instructed the jury to "disregard the last comment", and after applicant's motion for mistrial was denied.

Because he is a trial lawyer, Jesse Quackenbush observed the jurors. Pursuant to his testimony above, Mr. Murphy's words and actions had an immediate effect on some of the jurors. As Murphy made his lung, pointed his finger and commented on applicant's silence, several (4) jurors shifted position in their chairs.

From the record, the state's defense or position appears to be that Murphy's comment on applicant's silence was invited through a challenge by counsel for applicant or was part of the trial strategy of the applicant's trial counsel. In his questioning of applicant's witnesses, Mr. Baskett, questioned whether applicant challenged the State to comment on his silence or failure to testify; or

whether Mr. Quackenbush had heard the applicant's attorneys talking about such a strategy. The record is void of any remarks by either of applicant's counsel inviting or challenging the State to comment on applicant's Fifth Amendment right to remain silent.

Under no stretch of the imagination can the State seriously argue that the state's comment was invited, or that it was a careless slip of the tongue, or that it was an accident. The State's comment on applicant's silence was a verbal and physical attack on the applicant and his right to remain silent. Had the State believed that this was an accident or slip of the tongue, it would not have continued such behavior following objection, request for instruction to the jury and denial of motion for mistrial. Logic and the record leads to the conclusion that the comment was blatant and intentional.

One cannot determine beyond a reasonable doubt that the federal and state constitutional error complained of did not contribute to the verdict of guilty. Nor can one determine beyond a reasonable doubt that the error complained of did not contribute to a return of the death sentence.

## LAW APPLICABLE

Petitioner has a right to remain silent. United States Constitution 5th and 14th Amendment; Texas Constitution, Article I § 10; *Griffin v. State of California*, 308 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 and *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 353.

> The Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused silence or instructions by the court that such silence is evidence of guilt. *Griffin v. State of California*, 308 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106
>
> It is basic and fundamental law in this State that the failure of an accused to testify may not be the subject of comment by the prosecution. Such comment is in violation of the privilege against self-incrimination contained in Article 1, Section 10 of the

Page -17-

Texas Constitutution, and in express violation of Article 38.08, Vernon's Ann.C.C.P., which provides in part that' . . . the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause. *Bird v. State*, 527 S.W.2d 891, 893 (Tex.Cr.App. 1975); *See also McDaniel v. State*, 524 S.W.2d 68 (Tex.Cr.App. 1975); *Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App. 1975); *Hicks v. State*, 525 S.W.2d 177 (Tex.Cr.App. 1975); *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975); *Cherry v. State*, 507 S.W.2d 549 (Tex.Cr.App. 1974); *Watson v. State*, 171 Tex.Cr.R. 526, 352 S.W.2d 120 (1961); *Griggs v. State*, 166 Tex.Cr.R. 56, 311 S.W.2d 418 (1958); *Lee v. State*, 162 Tex.Cr.R. 489, 286 S.W.2d 633 (1956).

Further, a comment on an accused's failure to testify also presents a federal constitutional question as the same has been held violative of the self-incrimination clause of the Fifth Amendment, which is made applicable to the States by virtue of the Fourteenth Amendment. *Bird* at 893-4 , *See also Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967); *Fontaine v. California*, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed. 2d 154 (1968).

In *Griffin* the prosecutor directly and indirectly commented on the petitioner's failure to testify, as follows: "The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her." "He would know that. He would know how she got down the alley." "He would know how the blood got on the bottom of the concrete steps." "He would know how long he was with her in that box." "He would know how her wig got off." "He would know whether he beat her or mistreated her." "He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman." "These things he has not seen fit to take the stand and deny or explain." "And in the whole world, if anybody would know, this defendant would know." "Essie Mae is dead, she can't tell you her side of the story." "The defendant won't." *Griffin* at 610-611.

"The prohibition against such comment on the accused failure to testify is mandatory and the

Page -18-

adverse effect of any reference to the accused's failure to testify is not generally cured by instruction."

*Bird* at 894, *See also Overstreet v. State*, 470 S.W.2d 653 (Tex.Cr.App. 1971).

It is well settled in this State that for the argument or comment to offend against the article 38.08, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Bird* at 894, *See also Ramos v. State*, 419 S.W.2d 359 (Tex.Cr.App. 1967), and cases there cited *Overstreet v. State*, supra; *Koller v. State*, 518 S.W.2d 373 (Tex.Cr.App. 1975); *McDaniel v. State*, supra; *Hicks v. State*, supra.

> Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause. Article 38.08, Vernon's Ann.C.C.P.

> The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Id.*, *See also McDonald v. State*, supra; *Koller v. State*, supra; *Chapman v. State*, 504 S.W.2d 912 (Tex.Cr.App. 1974). In applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character. *Id.*, *See also Overstreet v. State*, supra; *Ramos v. State*, supra.

> . . . The trial court instructed the jury to disregard the comment. We have stated that "the. . . presumption that an instruction [to disregard] generally will not cure comment on failure of the accused to testify . . . has been eroded to the point that it applies only to the most blatant examples. Otherwise, the Court has tended to fiind the instruction to have force." *Moore v. State*, 999 S.W.2d 385, 405-6 (Tex.Crim.App. 1999), *See also Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995).

The Court in *Moore* found that, "when viewed in context, the comment by the prosecutor was intended to prevent the witness from serving as a conduit through which appellant could testify



without taking the stand. Moreover, though the comment was in front of the jury, it was directed at the court. We do not believe that the prosecutor's comment was so blatant that it rendered an instruction to disregard ineffective. Accordingly, the court's instruction to disregard the comment cured the error. *Moore v. State*, 999 S.W.2d 385, 406 (Tex.Crim.App. 1999); *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App. 1995).

Harmless-error analysis on habeas review of constitutional error is the Kotteakos standard. "The test under Kotteakos is whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct.1239, 1253, 90 L.Ed. 1557 (1946) Habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed. 353 (1993), See *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).

## ARGUMENT

The prosecutor in this case not only commented on Petitioner's silence, which is forbidden pursuant *Griffin,* but he also described Petitioner's physical appearance to the extent that there could be no mistake that he was referring to Petitioner. While speaking the prosecutor made a sudden movement toward Petitioner, the prosecutor pointed at the Petitioner and asks and answers questions, for petitioner: to wit, the prosecutor red faced, wheeled around facing the defendant; pointed his finger like a gun at the defendant; lunged or stepped toward the defendant; in a loud voice, said: "Let me tell you, when this man with the teardrop on his eye, who sit silently - - and sits there and watches while - - watches while his attorneys get up here, and say: What's going on here? Has the state caused you to tell you (sic) this lie? No; and became visibly shaken (trembling). As the prosecutor



was giving closing argument and he was the center of attention in the courtroom, his comments and physical movements could not be lost on the jury.

Should this Court find constitutional trial error, *Brecht* requires review of the record as a whole to determine whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

The prosecutor's comment and actions following the court's ruling on petitioner's objection, its instruction to the jury and its denial of petitioner's motion for a mistrial show that the prosecutor intended that the jury question why petitioner did not testify, and that petitioner's decision to remain silent should be used as evidence against him as the jury deliberated guilt-innocence. Certainly evidence presented against the interest of an accused in a criminal trial has a prejudicial effect and such evidence is presented for the purpose of influencing the trier of fact against the accused.

The jury not only determined guilt or innocence, but also determined punishment. In determining the appropriate punishment, a jury considers the evidence adduced at the guilt-innocence phase of the trial, as well as, the evidence presented during the punishment phase of the trial. Petitioner submits that the prosecutor's comments and actions were designed to have a substantial and injurious effect or influence in determining the jury's verdict, both at guilt-innocence and punishment.

### REQUEST FOR EVIDENTIARY HEARING

Petitioner request an evidentiary hearing, should the Court require further evidence that may not appear in the record.

## CONCLUSION AND PRAYER

WHEREFORE, Petitioner prays that upon consideration of the arguments and authorities cited her, and evidentiary hearing be granted; that his conviction be reversed and his death sentence be set aside, as the case may be; and for such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

L. VAN WILLIAMSON
ATTORNEY AT LAW
1017 W. 10th Avenue
Amarillo, Texas 79101
Phone (806)372-4431
Fax    (806)371-0349
Texas Bar No. 21624550

COUNSEL FOR PETITIONER

### VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF POTTER | § |

BEFORE ME, the undersigned authority, on this day personally appeared L. VAN WILLIAMSON, who by me being duly sworn, upon oath says that he is the attorney for Petitioner in the above and foregoing application, that he has read the application in full and that according to his information and belief, the factual allegations of same are true and correct.

L. VAN WILLIAMSON

SUBSCRIBED AND SWORN TO BEFORE ME by the said L. VAN WILLIAMSON on this _31st_ day of July, 2003, to certify which witness my hand and seal of office.

Notary Public, State of Texas



Page -22-

## CERTIFICATE OF SERVICE

I, L. VAN WILLIAMSON, attorney for Petitioner, hereby certify that a true and correct copy of the foregoing Application for Writ of Habeas Corpus was served, by U.S. Mail, upon Kelli L. Weaver, Assistant Attorney General, Capital Litigation Division, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, on this the 31st day of July, 2003.

L. VAN WILLIAMSON

## INDEX OF EXHIBITS

Judgment and Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A

Court of Criminal Appeals Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   B

Court of Criminal Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   C

Exhibit A

(Judgment and Sentence)

NO. 40,080-B

| THE STATE OF TEXAS | § | IN THE 181ST DISTRICT COURT |
|---|---|---|
| | § | |
| VS.            · | § | IN AND FOR |
| | § | |
| LARRY DONELL DAVIS | § | POTTER COUNTY, TEXAS |
| SID #TX03505842 | | |

## JUDGMENT

| | |
|---|---|
| Judge Presiding: | Samuel Kiser |
| Date of Judgment: | March 27, 1999 |
| Attorney for State: | Rebecca King |
| | J. Patrick Murphy |
| | Mark Baskett |
| Attorney for Defendant: | Warren Clark |
| | Bonita Gunden |
| Offense Convicted of: | Capital Murder |
| Degree: | Capital Felony |
| Date Offense Committed: | August 28, 1995 |
| Charging Instrument: | Indictment |
| Plea: | Not Guilty |
| Jury Verdict: | Guilty |
| Plea to Enhancement Paragraph(s): | n/a |
| Enhancement Paragraph(s): | n/a |
| Findings on Use of Deadly Weapon: | n/a |
| Punishment Assessed by: | Jury |
| Date Sentence Imposed: | March 27, 1999 |
| Punishment and Place of Confinement: | Death Penalty Texas Department of Criminal Justice-Institutional Division |
| Time Credited: | In 09/15/95 to present |
| Total Amount of Restitution/Reparation: | |
| Concurrent Unless Otherwise Specified: | |

ANDY GROO___
DISTRICT CLER__

1999 APR 15  A II: 28

POTTER COUNTY, TEXAS

BY_____ DEPUTY

**322**

**255388**

On the 11th day of March, 1999, this cause was called for trial, and the State appeared by her District Attorney, Rebecca King and her Assistant District Attorneys, J. Patrick Murphy and Mark Baskett, and the defendant, Larry Donell Davis, appeared in person in open court, defendant's counsel, Warren Clark and Bonita Gunden, also being present, and the said defendant having been duly arraigned, and having pleaded Not Guilty to the indictment herein, both parties announced ready for trial, and thereupon a jury, to wit: Frederick Leon Gibbs and eleven others, was duly selected, impaneled and sworn, who having heard the indictment read and the defendant's plea of Not Guilty thereto, and having heard the evidence submitted, been duly charged by the Court, and having heard arguments of counsel, retired in charge of the proper officer to consider the verdict, and afterward were brought into court by the proper officer, the defendant and defendant's counsel being present, and returned into open court the following verdict which was received by the Court and is now entered upon the minutes of the Court, to wit:

> "We, the jury, find the defendant, LARRY DONELL DAVIS, guilty of the offense of *Capital Murder*, as alleged in the indictment in Cause No. 40,080-B.
>
> /s/  *Frederick Leon Gibbs*
> PRESIDING JUROR"

THEREUPON on the 22nd day of March, 1999, this cause being again called, the State appeared by her District Attorney, Rebecca King and her Assistant District Attorneys, J. Patrick Murphy and Mark Baskett, and the defendant, appeared in person, his counsel, Warren Clark and Bonita Gunden, also being present, and the same jury being called to assess the punishment, evidence was presented to the same jury on the special issues pertaining to punishment.  After the same jury heard all the evidence presented by the State and the defendant on the special issues pertaining to punishment, the Court charged the jury as provided by law on the following special issues:

*Special Issue No. 1*

Do you find from the evidence beyond a reasonable doubt that there is a probability that the Defendant, LARRY DONELL DAVIS, would commit criminal acts of violence that would constitute a continuing threat to society?

**323**

*Special Issue No. 2*

Do you find from the evidence beyond a reasonable doubt that on or about August 28, 1995, (1) Larry Donell Davis, the defendant himself, actually caused the death of Michael Jerome Barrow, the deceased, on the occasion in question; or (2) if Larry Donell Davis did not actually cause Michael Jerome Barrow's death, that he intended to kill Michael Jerome Barrow or another; or (3) that Larry Donell Davis anticipated that a human life would be taken.

*Special Issue No. 3*

Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

And the jury, after hearing argument of counsel, retired in charge of the proper officer to consider its verdict and afterward was brought into open court by the proper officer, the defendant and his counsel being present, and on the 27th day of March, 1999, and in due form of law, returned into open court the following verdict which was received by the Court and is here and now entered upon the minutes of the court, to wit:

Answer to Special Issue No. 1:

"We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to Special Issue No. 1 is **"Yes."**

*/s/ Frederick Leon Gibbs*

Answer to Special Issue No. 2:

"We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to Special Issue No. 2 is **"Yes."**

*/s/ Frederick Leon Gibbs*

Answer to Special Issue No. 3:

"We, the jury, unanimously find and determine that the answer to this Special Issue is "No."

*/s/ Frederick Leon Gibbs*

**324**

**255390**

It is therefore CONSIDERED and ADJUDGED by the Court that the defendant, LARRY DONELL DAVIS, is guilty of the offense of Capital Murder as found by the jury, and the jury having further answered "Yes" to Special Issue No. 1, "Yes" to Special Issue No. 2 and "No" to Special Issue No. 3; and the law providing that on such jury finding the Court shall assess the death penalty to the defendant.

It is, therefore, the Order of the Court that the defendant, LARRY DONELL DAVIS, be punished by having the death penalty assessed against him.

Thereupon the defendant, LARRY DONELL DAVIS, was asked by the Court whether he had anything to say why said sentence should not be pronounced against him and he answered nothing in bar thereof, whereupon the Court proceeded, in the presence of said defendant, LARRY DONELL DAVIS, to pronounce sentence against him as follows:

Whereas, the defendant, LARRY DONELL DAVIS, has been adjudged to be guilty of capital murder by the jury and the jury having further answered "Yes" to Special Issue No. 1, "Yes" to Special Issue No. 2 and "No" to Special Issue No. 3; and the law providing that on such jury finding the Court shall sentence the defendant to death.

It is, therefore, the ORDER of the Court that the defendant, LARRY DONELL DAVIS, is sentenced to death; but the law further providing for an automatic appeal to the Court of Criminal Appeals of the State of Texas, the sentence is suspended until the decision of the Court of Criminal Appeals has been received by this Court.

JAIL CREDIT ALLOWED: In 09/15/95 to present.

The defendant, LARRY DONELL DAVIS, is not remanded to the custody of the Sheriff of Potter County, Texas, to be transported to the Institutional Division of the Texas Department of Criminal Justice at Huntsville, Texas, there to await the action of the Court of Criminal Appeals and the further order of this Court.

SIGNED this _15th_ day of _April_ , 1999.

CINDY GROOM.
DISTRICT CLE.
POTTER COUNTY TEXAS

_____
JUDGE PRESIDING

BY_____ .DEPUTY

**325**

25539:

NO. 40,080-B

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 181ST DISTRICT COURT |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| LARRY DONELL DAVIS | § | POTTER COUNTY, TEXAS |
| SID #TX03505842 | | |

FINGERPRINT PAGE

**THE STATE OF TEXAS**   X   Cause No.

**VS.**   X

*Larry Davis*   X   *40,080-B*

X. *[mark]*

*[signature] 144*

Signature of Bailiff,
Acting for the Court, who took
the thumbprint immediately to
the left hereof on this

Defendant's Right
Thumbprint

*27* ___ day of

*March* 19 *99*.

GROOM
DISTRICT CLERK

APR 15  A  26

POTTER CO., TEXAS   **326**

255392

501 S. Fillmore Suite 1B
P.O. Box 9570
Amarillo, Texas 79105-9570

Case 2:03-cv-00001-J    B   Document 8   Filed 07/31/03   Page 35 of     PageID 57

**Potter County**

Cindy Groomer
DISTRICT CLERK
COUNTY COURTS AT LAW (CIVIL)




BILL OF COSTS
CRIMINAL

CAUSE NO. 040080-00-B

STYLE: THE STATE OF TEXAS VS LARRY DONELL DAVIS

IN AND FOR THE: 181ST DISTRICT COURT

JUDGMENT DATE: MARCH 27, 1999

TO: TDCJ-ID

| | | |
|---|---|---|
| CLERK FEE | *$* | 40.00 |
| FUGITIVE APPREHENSION FUND | | 5.00 |
| JUVENILE JUSTICE CRIME CENTER | | .25 |
| STATE CONSOLIDATED CRIMINAL FEES | | 80.00 |
| CRIME VICTIM COMPENSATION FUND | | 45.00 |
| JUDICIAL/COURT PERSONNEL TRAINING FUND | | 1.00 |
| RECORDS PRESERVATION | | 10.00 |
| COURTHOUSE SECURTY FEE | | 5.00 |
| SHERIFF FEES | | 320.00 |
| ATTORNEY FEES (COURT APPOINTED) | | 50840.12 |
| FINE | | |
| LAW LIBRARY | | |
| JURY FEE | | 20.00 |
| MISC.: INVESTIGATOR & WITNESS FEES | | 1778.97 |
| APPEAL TRANSCRIPT | | |
| TIME PAYMENT FEE | | |
| GRAFFITI ERADICATION FEE | | |
| | TOTAL COSTS | 53145.34 |
| | PRIOR PAYMENTS | |
| | BALANCE DUE | 53145.34 |

I HEREBY CERTIFY THE ABOVE TO BE A CORRECT ACCOUNT OF THE FINE AND COSTS
IN THE ABOVE CAPTIONED CAUSE AS SHOWN IN THE RECORDS AS OF APRIL 15,
1999.

ISSUED AND GIVEN UNDER MY HAND AND SEAL ON APRIL 15, 1999.

                    CINDY GROOMER, CLERK OF THE COURT
                         POTTER COUNTY, TEXAS

            BY  *(signature)*          DEPUTY

Exhibit B

(Court of Criminal Appeals Original Opinion)



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. 54,487-01

### EX PARTE LARRY DONELL DAVIS

### HABEAS CORPUS APPLICATION
### FROM POTTER COUNTY

*Per Curiam.*

### O R D E R

This is an application for writ of habeas corpus filed pursuant to the provisions of Art. 11.071, V.A.C.C.P.

On March 19, 1999, a jury found applicant guilty of the offense of capital murder. After the jury returned answers to the punishment phase special issues, the trial court assessed punishment at death. The conviction was affirmed on direct appeal. Davis v. State, No. 73,458 (Tex.Cr.App. delivered October 23, 2002).

DAVIS   -2-

In the instant cause, applicant presents a single allegation challenging the validity of his conviction and resulting sentence. The trial court has entered findings of fact and conclusions of law recommending the relief sought be denied. We have reviewed the record. The trial court's findings and conclusions are supported by the record and upon such basis the relief sought by the applicant is denied.

IT IS SO ORDERED THIS THE 18TH DAY OF DECEMBER, 2003.

Do Not Publish

A True Copy
Attest:
Troy C. Bennett, Jr., Clerk
Court of Criminal Appeals of Texas

By _____

Exhibit C

(Court of Criminal Appeals Subsequent Opinion)



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. 54,487-01

### EX PARTE LARRY DONELL DAVIS

### HABEAS CORPUS APPLICATION FROM POTTER COUNTY

*Per Curiam.*

O R D E R

This is an application for writ of habeas corpus filed pursuant to the provisions of Art. 11.071, V.A.C.C.P.

On March 19, 1999, a jury found applicant guilty of the offense of capital murder. After the jury returned answers to the punishment phase special issues, the trial court assessed punishment at death. The conviction was affirmed on direct appeal. Davis v. State, No. 73,458 (Tex.Cr.App. delivered October 23, 2002).

DAVIS   -2-

In the instant cause, applicant presents a single allegation challenging the validity of his conviction and resulting sentence. The trial court has entered findings of fact and conclusions of law recommending the relief sought be denied. We have reviewed the record. The trial court's findings and conclusions are supported by the record and upon such basis the relief sought by the applicant is denied.

IT IS SO ORDERED THIS THE 18TH DAY OF DECEMBER, 2002.

Do Not Publish